IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

NORTHERN INSURANCE COMPANY OF )
NEW YORK, subrogated to the )
rights of JAMES K. LUDWIG, JR. )
and CAROL C. LUDWIG, )
                                )
    Plaintiffs, )
                                )   CASE NO. CV403-99
v. )
                                )
CHATHAM COUNTY, GEORGIA, )
    Defendant. )

## ORDER

This case came before the Court for a bench trial held on March 5, 2008. After careful consideration, the Court finds that Plaintiffs are entitled to a recovery of **$49,051.15**.[1]

### BACKGROUND

This case arises from an allision[2] between a yacht and the Causton Bluff Bridge ("the Bridge"). The Causton Bluff Bridge is a drawbridge on the Islands Expressway connecting the City of Savannah with Wilmington Island, Whitemarsh Island, and

---

[1] Plaintiffs Second Motion to Amend the Pretrial Order (Doc. 75), which amends the list of witnesses to be called at trial, is **GRANTED**. Defendant's Motion to Exclude Additional Damage Evidence (Doc. 78) is **DENIED AS MOOT**, because the evidence at issue was not presented at trial and has not been considered by the Court. Defendant's Motion for Directed Verdict is **DENIED**.

[2] In admiralty law terminology, an "allision" is the violent encounter of a moving vessel and a stationary object such as a bridge, pier, wharf, or anchored vessel.

Tybee Island. The Bridge is owned, operated, and maintained by Defendant Chatham County, Georgia ("the County").

The primary purpose of the Bridge is to allow passage of vehicles over the Intercoastal Waterway of the Wilmington River. The Bridge consists of an elevated approach on piles with a concrete abutment on each side, which contains controls, a motor, gearing, counterweights, and pivot and braking mechanisms for each half of the span. The Bridge permits passage of light pleasure craft, tug and tow vessels, and commercial vessels along the water of Intercoastal Waterway. The County employs bridge tenders to open the bridge.

On October 6, 2002, Plaintiff James Ludwig was sailing his vessel, "LOVE OF MY LIFE," on the Intercoastal Waterway. Ludwig contacted the bridge operator, Wesley Bowers, via radio and requested that the Bridge be raised to permit his vessel to pass beneath it. As the bridge tender opened the Bridge, the northwest span of the bridge began "drifting" down. The mast of the boat hit the span of the bridge.

Plaintiffs filed suit in June of 2003. On June 28, 2004, the Court granted the County's motion for summary judgment, holding that the County was entitled to sovereign immunity. Plaintiffs appealed. On January 28, 2005, the Eleventh Circuit Court of Appeals affirmed this Court's decision. On

April 25, 2006, however, the United States Supreme Court reversed the Eleventh Circuit Court of Appeals, holding that the County was not entitled to sovereign immunity.

On remand, this Court denied Plaintiff's Motion for summary judgment on the issue of liability on August 3, 2007. A bench trial was held on March 5, 2008 to determine liability and damages, and the Court now issues its ruling in this case.

## ANALYSIS

### I. Liability

Plaintiffs contend that the County is fully liable because the drawbridge span drifted down and caused the allision. The County maintains, in contrast, that Ludwig failed to keep a listening watch on the vessel radio and failed to steer his boat so as to avoid the bridge. The County therefore seeks a finding of comparative negligence and an allocation of damages based on proportional fault.

The Supreme Court has adopted a rule of comparative negligence in maritime collision and allision cases: "[W]hen two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault . . . ." United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 411, 95 S. Ct. 1708, 44 L. Ed. 2d

251 (1975). If it is not possible to measure the comparative degree of fault, then liability is to be allocated equally. Id.

After considering the evidence presented at trial, the Court finds that Defendant Chatham County is 100% liable for the damages proximately caused by the allision. The Court finds that the County has not established comparative fault on the part of Ludwig.

First, with respect to a listening watch, there is no concrete evidence that Ludwig turned his radio off at any time prior to the incident. The only evidence offered by the County to support this assertion is the testimony of the bridge tender, who stated that he was unable to establish radio contact when the bridge span began to drift. However, all parties agree that Ludwig and the bridge tender had communicated by radio prior to the incident and that Ludwig also used his radio shortly thereafter. The County has not shown that Ludwig was negligent merely because the bridge tender testified that Ludwig did not respond to radio communication while the boat was in the process of colliding with the bridge.

At trial, Ludwig testified in detail about the chaos that occurred at the time of the crash. When he saw that the bridge was down, he put the boat in full reverse. After the

allision, as the mast and boom began falling back, he pushed his wife down on the deck so that they would not be crushed. Then, she took the helm to keep the boat stabilized, and he scrambled around the deck, trying to pull the halyards forward to prevent the mast from falling further. The stays were snapping because of the tension they were under, and Ludwig was concerned that the stays would poke into the side of the boat and sink the vessel. Another boater came onboard to help Ludwig save the boat from further damage. At this same time, the bridge tender was "yelling over" and pointing to the radio. The Court finds that it was not negligent for Ludwig to be unavailable on the radio during this time period.

Second, the County suggested that Ludwig was comparatively negligent in steering the vessel. The County elicited testimony from the bridge tender that the boat could have passed safely through the channel if Ludwig had initially approached the center of the channel instead of approaching more to one side. Further, the County suggested that Ludwig could have redirected the boat to avoid the crash after the span began to fall.

The Court finds that these arguments are speculative and of little probative value. The only evidence to support these arguments is the testimony of the bridge tender, who was on top of the bridge looking down at the scene and not down at

water level where the current and the engine were pushing the vessel. There was no testimony that the bridge tender had ever operated a pleasure craft, a large motor boat, or a sailboat, or that he had any knowledge about how to navigate a boat under the conditions in which Ludwig found himself at the time of the incident. Instead, the Court credits Ludwig's testimony that (1) he properly lined up the mast on his initial approach and (2) he was unable to stop or redirect the boat after he saw the falling bridge span because of the momentum of the boat and the forward current in the waterway.

For these reasons, the Court holds that Plaintiffs are entitled to a full recovery of all damages proximately caused by the allision.

## II. Damages

Plaintiffs seek damages for repair costs, personal expenses, and loss of use of the vessel. In admiralty cases, the owner of a damaged vessel is entitled to recover the reasonable cost of repairs necessary to restore it to its pre-casualty condition. See Hemingway v. Star Savannah, MV, 198 F. Supp. 2d 855, 857 (E.D. Tex. 2002). Out-of-pocket costs incidental to a marine casualty loss are fully recoverable. See Moore-McCormack Lines v. the Esso Camden, 244 F.2d 198, 202 (2nd Cir. 1957). The owner of a damaged vessel is also entitled to lost profits. Id. at 203; Bouchard Transp. Co.

Inc. v. Tug Ocean Prince, 691 F.2d 609, 612 (2d. Cir. 1982). The Court makes the following findings of fact with respect to Plaintiffs' damages:

1. Plaintiffs presented documents showing that Palmer Johnson, the boat repair facility, estimated $34,618.00 in repair costs from the bridge incident. (Pls.' Ex. 8.) The insurance company relied on this estimate in paying $32,818.00 to Ludwig, which was the $34,618.00 repair estimate minus the deductible of $1,800.00. (Def.'s Ex. 9.) Plaintiffs are therefore entitled to recover the **$32,818.00** paid by the insurance company and the **$1,800.00** deductible.

2. Plaintiffs are entitled to recover the **$540.00** paid to Palmer Johnson for haul and launch of the vessel. Ludwig testified regarding this amount, which was not included in the repair estimate above.

3. Plaintiffs are also entitled to recover $552.48 for radar and radio repair performed by Ray Marine and $112.55 for Palmer Johnson to reinstall the radar, for a total of **$665.03**. Plaintiffs presented documents to support these amounts (Pls.' Ex. 8), and Ludwig testified that the radar and radio extended up through the mast and were short-circuited when the mast was damaged.

4. At trial, Ludwig testified that the insurance company paid a total of $52,953.11 for repairs. The Court

finds that Plaintiffs are not entitled to recover repair costs in excess of the costs discussed above. The evidence established that several days prior to the bridge incident, Plaintiffs' vessel suffered a grounding unrelated to the bridge allision. The repairs from the bridge allision and the unrelated grounding were all performed by Palmer Johnson. However, Plaintiffs have not shown that the additional repair costs were proximately caused by the bridge allision.[3]

5. Plaintiffs are entitled to recover out-of-pocket losses caused by the allision. These damages include the cost of travel between Boston and Savannah, hotel and car rental bills, shipping of cargo and parts, and other miscellaneous expenses associated with the incident and the boat repair. (Pls.' Ex. 8.) The Court finds that Plaintiffs are entitled to the following amounts:

| | |
|---|---:|
| Personal Expenses prior to Feb. 2, 2003 | $1,854.84 |
| Car Rental on May 24, 2003 | $312.87 |
| Shipping Costs for the Radar & Radio | $172.57 |
| Hotel in Atlanta on May 24, 2003 | $69.00 |
| Car Rental on May 28, 2003 | $119.85 |
| Airfare on May 24, 2003 | $576.90 |
| **Total Personal Loss** | **$3,106.03** |

---

[3] Plaintiffs have presented no specific documents to support repair bills in excess of the amounts awarded in Paragraphs 1-3. And the testimony and documentary evidence do not delineate which of the other repair costs were associated with the bridge allision and which repairs were associated with the grounding.

8

6. The Court holds that Plaintiffs are not entitled to recover the costs of chartering a replacement boat for a vacation in Key West.

7. The Court also holds that Plaintiffs are not entitled to recover damages for "loss of use" or lost profits. In admiralty, an owner of a pleasure vessel is not entitled to damages merely for "loss of use." <u>Bouchard</u>, 691 F.2d at 612. Instead, a vessel owner is only entitled to an award of lost profits. <u>Id.</u> "Such actual lost profits must be proven with a reasonable degree of certainty." <u>Id.</u> In this case, Plaintiffs have not shown that they had any scheduled charters, charter contracts, or opportunities for charter during the time that the boat was in detention. Therefore, Plaintiffs have failed to prove lost profits.

8. Plaintiffs may not recover for the cost of hiring a marine surveyor, because the evidence showed that the surveyor did not submit a bill for the work and was never paid.

9. The total amount of damages is therefore calculated as follows:

| | |
|---|---:|
| Repair of the Mast paid by Insurance | $32,818.00 |
| Deductible | $1,800.00 |
| Haul and Launch Vessel | $540.00 |
| Radar and Radio Repair | $665.03 |
| Personal Loss | $3,106.03 |
| **TOTAL DAMAGES** | **$38,929.06** |

## III. Prejudgment Interest

Plaintiffs ask the Court to award prejudgment interest, compounded annually, at the rate of 8.25% per annum. The County asks that the Court deny prejudgment interest, or, in the alternative, award prejudgment interest for only a limited period of time, not compounded, at a rate of 4.75% per annum.

Whether to award prejudgment interest depends on the circumstances of each case and falls within the discretion of the trial court. City of Milwaukee v. Cement Div., Nat. Gypsum Co., 515 U.S. 189, 196, 115 S. Ct. 2091, 132 L. Ed. 2d 148 (1995)(citing The Scotland, 118 U.S. 507, 518-519, 6 S. Ct. 1174, 30 L. Ed. 153 (1886)). "In general, prejudgment interest should be awarded in admiralty cases - not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled." Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540, 1550 (11th Cir. 1987)(quoting Noritake Co. v. M/V Hellenic Champion, 627 F.2d 724, 728 (5th Cir. 1980)); see also Ryan Walsh Stevedoring Co., Inc. v. James Marine Serv., Inc., 792 F.2d 489, 492 (5th Cir. 1986)("[P]rejudgment interest must be awarded unless unusual circumstances make an award inequitable.").

10

"Discretion to deny prejudgment interest is created only when there are 'peculiar circumstances' that would make it inequitable for the losing party to be forced to pay prejudgment interest." Self, 832 F.2d at 1550. The most common example of an exceptional or peculiar circumstance is when the plaintiff is responsible for an "undue delay in prosecuting the lawsuit." City of Milwaukee, 515 U.S. at 196. But "neither a good-faith dispute over liability nor the existence of mutual fault justifies the denial of prejudgment interest." Id. at 199. "[T]he existence of a legitimate difference of opinion on the issue of liability is merely a characteristic of most ordinary lawsuits. It is not an extraordinary circumstance that can justify denying prejudgment interest." Id. at 198.

In this case, the County argues that the protracted procedural history is a peculiar circumstance that should preclude or limit the award of prejudgment interest. After this Court granted summary judgment to the County on June 28, 2004, twenty-two months passed before the Supreme Court reversed that decision. The County argues that it would be inequitable to require the payment of prejudgment interest because rulings had been in its favor for twenty-two months.

There is some precedent for the County's position that a lengthy procedural delay constitutes a peculiar circumstance.

11

In Koch Refining Co. v. Jennifer L. Boudreau M/V, 85 F.3d 1178, 1184 (5th Cir. 1996), the Fifth Circuit held that the district court did not abuse its discretion in denying prejudgment interest to a barge owner based on extraordinary delays prior to trial. The trial did not occur until 7½ years after the suit was filed, because of (1) an insurance dispute, and appeal, among third parties to the case, (2) a criminal investigation of the presiding judge, resulting in eventual reassignment of the case, and (3) several trial dates that were continued at the last minute due to factors outside of either party's control. The court affirmed the district court's finding that the extraordinary delay, which was attributable to neither party, was a peculiar circumstance that justified denying pre-judgment interest. Id; see also Matter of P & E Boat Rentals, Inc., 872 F.2d 642, 655 (5th Cir. 1989)(affirming the denial of pre-judgment interest where two trial dates had been upset because the district court was hearing the twenty-week criminal trial of the Governor of Louisiana).

The more common result, however, is that trial delays do not constitute a peculiar circumstance. See Socony Mobil Oil Co., Inc. v. Tex. Coastal and Int'l., Inc., 559 F.2d 1008,

1014 (5th Cir. 1977).[4] This is particularly true where the delay was not caused by the party seeking prejudgment interest. Id. ("Trial delays not caused by the plaintiffs do not constitute 'the exceptional or peculiar circumstances needed to negate an interest award.'")

Although this case has been pending for more than 4½ years, the length of the proceeding has been caused only by the ongoing dispute between the parties. There is no suggestion that any period of delay is attributable to Plaintiffs. Unlike the Fifth Circuit decision in Koch, no period of delay was caused by extraneous factors unrelated to the dispute that forms the core of this case. Here, there was a genuine dispute as to the issue of sovereign immunity that required consideration by multiple appellate courts before the issue was resolved. Although the overall period of time was lengthy, the Court finds that this genuine dispute is not a peculiar circumstance. Accordingly, Plaintiffs are entitled to recover prejudgment interest.

The common practice is to award prejudgment interest on repair costs from the date of the accident, even where the owner does not pay these costs until a later date. Ryan Walsh

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

Stevedoring, 792 F.2d at 493; Mobil Oil Corp. v. Tug Pensacola, 472 F.2d 1175, 1176 (5th Cir. 1973)("[T]he general rule in admiralty is to award interest from the date of collision except where peculiar circumstances warrant awards only from the date of judgment."). Consistent with the common practice, the Court finds that interest should accrue from the date of the allision, October 6, 2002.

The Eleventh Circuit has held that the proper interest rate is the prime rate during the period of injury. Sunderland Marine Mut. Ins. Co., Ltd. v. Weeks Marine Const. Co., 338 F.3d 1276, 1280 (11th Cir. 2003); see also First Nat'l Bank of Chicago v. Standard Bank & Trust, 172 F.3d 472, 480 (7th Cir. 1999). The only evidence of the prime rate is a document submitted by the County showing that the prime rate in the last week of September 2002 was 4.75%. (Def.'s Ex. 16.) The Court relies on this evidence and finds that 4.75% is the appropriate interest rate.

The decision of whether to award compound interest is left to the discretion of the district court. Cement Div., Nat. Gypsum Co. v. City of Milwaukee, 31 F.3d 581, 587 (7th Cir. 1994). In this case, the Court awards simple interest at a rate of 4.75% per annum from the date of the incident. See Matter of Palmer Johnson Savannah, Inc., 1 F. Supp. 2d 1386, 1390 (S.D. Ga. 1997)(J. Moore).

## CONCLUSION

The Court finds that Plaintiffs are entitled to a recovery of $38,929.06 in damages, plus simple interest at the rate of 4.75% per annum from October 6, 2002 to March 26, 2008.[5] The total interest is $10,122.09. The total award (damages plus interest) is **$49,051.15**. The County shall have **15 days** to pay the judgment without incurring additional interest. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiffs consistent with this Order and to **CLOSE** this case.

SO ORDERED this __26__ day of March, 2008.

[signature]
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[5] From October 6, 2002 to March 26, 2008 is 1998 days.